**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| CELESTINO LOPEZ LAINEZ, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | |
| TRINITY MINTER, Warden of West Tennessee Detention Facility; SCOTT LADWIG, in his official capacity as Acting Director of the New Orleans Field Office of ICE's Enforcement and Removal Operations Division; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; and PAMELA BONDI, U.S. Attorney General, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:26-cv-02147-SHL-cgc |
| Respondents. | ) ) | |

**ORDER GRANTING PETITION**

On March 6, 2026, Petitioner Celestino Lopez Lainez filed the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (ECF No. 1.)  Lopez Lainez challenges his continued detention in the West Tennessee Detention Facility without a bond hearing, and seeks either a bond hearing or release, arguing that, due to Respondents' "indefensible interpretation of immigration statutes," he has been detained "without the possibility of release on bond, even though he has resided in the United States for more than 3 years."  (ECF No. 1 at PageID 1.) That same day, the Court issued an order requiring Respondents to respond.  (ECF No. 7.) Respondents responded one week later.  (ECF No. 9.)  Lopez Lainez replied on March 23.  (ECF No. 10.)  For the reasons explained below, Lopez Lainez is entitled to immediate release, and the Petition is **GRANTED**.

## BACKGROUND

Lopez Lainez, a citizen of Guatemala, entered the United States in July 2022 at an unknown location, and he lives in Shelby County, Tennessee, with his brother. (ECF Nos. 1 at PageID 14; 9 at PageID 63.) On December 30, 2025, he was stopped by law enforcement on his way home from a soccer game in Memphis and taken into ICE custody. (ECF No. 1 at PageID 14.) He remains at the West Tennessee Detention Facility in Mason, Tennessee. (Id.) There is no indication that he has a criminal history. (Id.)

He requested a bond hearing in Immigration Court, but the Immigration Judge ("IJ") denied his request, citing the recent decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (ECF No. 9-2 at PageID 77.) The present Petition followed, the crux of which argues that Lopez Lainez was illegally detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Lopez Lainez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. For example, noncitizens with certain criminal records may not be released on bond. 8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien

described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Lopez Lainez "faces the prospect of months, or even years, in immigration custody, separated from his family and community." (ECF No. 1 at PageID 15.) His Petition alleges violations of § 1226(a) and Fifth Amendment due process. (Id. at PageID 15–17.) He seeks his immediate release. (Id.)

In response, Respondents contend that § 1225, not § 1226, applies to Lopez Lainez because he is an "applicant for admission"; that Lopez Lainez should be treated for due process

3

purposes as if stopped at the border; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released.  (ECF No. 9 at PageID 64–69.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Lopez Lainez challenges his detention without bond as violative of § 1226(a) and his constitutional rights. (ECF No. 1 at PageID 15–17.)  The Court first interprets the statutes to determine whether §1225 or § 1226 applies to Lopez Lainez, and then analyzes the due process claim.

### I.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
> . . .
>     (2)    Inspection of other aliens
>     (A)    In general

> Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained."  <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)    Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)    <u>may</u> continue <u>to detain</u> the arrested alien; and
> (2)    <u>may</u> <u>release</u> the alien on—
>     (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

5

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[1]

Lopez Lainez argues that ICE's new interpretation of § 1225(b)(2)(A) violates 8 U.S.C. § 1226(a) and his rights under the Fifth Amendment. (ECF No. 1 at PageID 15–17.) He argues that § 1226(a) applies to him because he has "resid[ed] in the United States for many years prior to apprehension and removal proceedings." (Id. at PageID 15.) Thus, he is neither "arriving" nor "seeking admission." (Id. at PageID 11.)

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Lopez Lainez because he is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 9 at PageID 64.) As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing." (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Lopez Lainez is an "applicant for admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. But Lopez Lainez was not "arriving" when he was detained far away from the

_____

[1] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

United States border, after having been in this country for over three years. (ECF No. 1 at PageID 11.) Also, the record does not show that he was eligible for expedited removal proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Lopez Lainez would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Lopez Lainez was seeking admission at the time of his detention, nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over three years. To interpret "applicant for admission" using its ordinary meaning but outside the context of the provision, as argued by Respondents, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested

7

noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal

history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall

take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits

having committed, or admits committing acts which constitute the essential elements of any

burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime

that results in death or serious bodily injury to another person . . . .").  But, under Respondents'

reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c)

would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a

statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Lopez Lainez's reading of the statute is

the only one compatible with the presence of § 1226(c).  What is more, Lopez Lainez has no

criminal record in the United States, so this mandatory detention provision cannot conceivably

be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Lopez Lainez's situation.  That section applies

to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the

Attorney General, an alien may be arrested or detained pending a decision on whether the alien is

to be removed from the United States."  8 U.S.C. § 1226(a).  Lopez Lainez was charged with

being removable and detained in West Tennessee.  Thus, the Attorney General has discretion

under this section.  She "may continue to detain [him]" or she "may release [him] on bond."

(Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8

C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in

Lopez Lainez's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025,

Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with

criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for over three years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## II.     Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official

9

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Lopez Lainez argues that Respondents violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing.  (ECF No. 1 at PageID 16–17.) Respondents, however, assert that Lopez Lainez's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 9 at PageID 67 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Lopez Lainez, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Lopez Lainez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Lopez Lainez's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Lopez Lainez was present in the United States for over three years, living with his brother.  (ECF No. 1 at PageID 14.)  This fact indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Lopez Lainez is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates

10

his due process rights.  Thus, consistent with the Court's decision in <u>Godinez-Lopez</u>, and after consideration of the record, Lopez Lainez's petition is **GRANTED**.

<u>**CONCLUSION**</u>

For the reasons stated above, the Petition is **GRANTED**.  Respondents are ordered to release Lopez Lainez immediately.  Respondents are **ENJOINED** from pursuing Lopez Lainez's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to file a Status Report with this Court on or before April 3, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 31st day of March, 2026.

s/ Sheryl H. Lipman            <br>SHERYL H. LIPMAN<br>CHIEF UNITED STATES DISTRICT JUDGE